# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JOAN B. GOTTSCHALL | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 1740 | DATE | SEP 09 2003 |
| CASE TITLE | William Joseph Buck (#106995) vs. Lake County Sheriff Del Rey, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, the defendants motion to dismiss [#19] is granted in part and denied in part. The plaintiff may proceed on his claims that the defendant placed him in punitive segregation without due process, denied him the opportunity to practice his religious beliefs, acted with deliberate indifference to his serious medical needs, and denied him equal protection. However, Sheriff Del R is dismissed as a defendant pursuant to Fed. R. Civ. P. 12(b)(6); the plaintiff's court access and exercise claims are also dismissed for failure to state a colorable claim under 42 U.S.C. § 1983. Furthermore, the amended complaint dismissed to the extent that the defendants are sued in their official capacities. The plaintiff may proceed only again the defendants DeFilippo, Machek, Taxta and Trush, and only in their individual capacities. The defendants are directe to answer or otherwise plead within twenty-one days of the date of this order.

(11) ■ [See accompanying Memorandum Opinion and Order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 11 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | 33 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 SEP 10 PM 3:14 | | |
| | | FILED FOR DOCKETING | date mailed notice | |
| mjm | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
SEP 1 1 2003

WILLIAM J. BUCK (#R-21689), )
)
    Plaintiff, )
) No. 03 C 1740
v. )
) Judge Joan B. Gottschall
)
LAKE COUNTY SHERIFF, et al., )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

The plaintiff, currently a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that while he was in the custody of the Lake County Jail, the defendants, jail officials, violated the plaintiff's constitutional rights by placing him in punitive segregation without due process, by infringing on his First Amendment freedoms, and by subjecting him to inhumane conditions of confinement. The plaintiff believes that the correctional staff mistreated him because he was charged with [and ultimately convicted of] murdering a police officer. This matter is before the court for consideration of the defendants' motion to dismiss the amended complaint for failure to state a claim. For the reasons stated in this order, the motion will be granted only in part.

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *reh'g denied*, 405 U.S. 948 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which

33

would entitle him to relief." *Haines*, 404 U.S. at 521; *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000).

When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to the plaintiff. *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Jones v. Edgar*, 3 F. Supp. 2d 979, 980 (C.D. Ill. 1998).

### Count 1: Placement in "Isolation/Segregation" without Due Process

The plaintiff first claims that he was placed in the maximum security disciplinary unit upon arrival at the jail and remained in "isolation/segregation" throughout his confinement there, "locked down" in his cell more than twenty-three hours a day. The plaintiff contends that he was effectively subjected to disciplinary segregation although he had not violated any jail rules, did not receive a disciplinary report, and was not afforded a hearing.

Accepting the plaintiff's factual allegations as true for purposes of the motion to dismiss, his placement in what purportedly amounted to punitive segregation states a colorable due process claim. Although correctional officials have "considerable leeway" to punish a jail detainee for misconduct committed while in pretrial custody, that punishment can be imposed only after affording the detainee some sort of due process. *Rapier v. Harris*, 172 F.3d 999, 1004-1005 (7th Cir. 1999), *relying on Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The defendants cite several cases which hold that placement in segregation does not generally constitute "an atypical or significant hardship in relation to the ordinary incidents of prison life." *See, e.g., Sandin v. Conner*, 515 U.S. 472, 484

2

(1994). However, as the plaintiff correctly points out, those cases are inapposite, as they relate to convicted prisoners. Pretrial detainees may not be subjected to punitive conditions of confinement [except, as noted above, in connection with jail misconduct and only after being afforded due process].

It may be that there were extenuating circumstances that justified the plaintiff's placement in segregation (for example, there may have been a jail-wide lockdown warranted by some crisis, the plaintiff may have been classified as a suicide or high escape risk, there may have been an assessment that he was particularly dangerous, or correctional officials may have believed that he faced danger at the hands of fellow prisoners). No due process is required if the inmate is placed in segregation "not as punishment but for managerial reasons." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002). Correctional officers are constitutionally obligated to take reasonable measures to ensure inmates' safety. *Hudson v. Palmer*, 465 U.S. 517, 526 (1984); *Washington v. LaPorte County Sheriff's Department*, 306 F.3d 515 (7th Cir. 2002). If custodial officials know or should know of an inmate's particular susceptibility to suicide or other harm, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability. *See, e.g., Hall v. Ryan*, 957 F.2d 402, 405 (7th Cir. 1992); *Colburn v. Upper Darby Township*, 838 F.2d 663, 669 (3rd Cir. 1988), *cert. denied*, 489 U.S. 1065 (1988). Therefore, placement in administrative, non-punitive segregation as a "preventive rather than a punitive" measure would not require notice and a hearing and would not violate the plaintiff's constitutional rights. Moreover, Count 4 of the complaint suggests that the plaintiff may simply have been classified as a maximum security inmate, with its concomitant restrictions.

However, the court will not engage in speculation; any defenses or explanations as to the plaintiff's segregation status must be raised by way of summary judgment. It is not the case that the plaintiff could prove "no set of facts" entitling him to relief in federal court. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The motion to dismiss must be denied as to the plaintiff's claim that he was placed in what amounted to disciplinary segregation without due process.

## Count 2: Plaintiff's Inability to Participate in Religious Services

In Count 2, the plaintiff claims that, despite repeated requests, he was denied permission to attend group religious services. Prison administrators must permit inmates a reasonable opportunity to exercise their religious freedom. *See, e.g., Pippins v. Adams County Jail*, 851 F. Supp. 1228, 1233 (C.D. Ill. 1994), *citing Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). When a challenged prison regulation impinges on an inmate's constitutional rights, the regulation is valid only if it is "reasonably related" to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Siddiqi v. Leak*, 880 F.2d 904, 909 (7th Cir. 1989).

The defendants seek dismissal based on the plaintiff's failure to allege what services he wished to attend, as well as the exact dates and circumstances of the denials. However, the Federal Rules of Civil Procedure provide a liberal standard of notice pleading; the *pro se* plaintiff need not plead all the facts or evidence in support of his claims. *See, e.g., Clara v. City of Chicago*, No. 99 C 7052, 2002 WL 1553419, *2 (N.D. Ill. Jul. 15, 2002) (Hart, J.), *citing, inter alia, McCormick v. City of Chicago*, 230 F.3d 319, 324-25 (7th Cir. 2000). The allegations need only be sufficient to place the defendants on notice of the gravamen of the complaint. *Id.* Count Two passes muster

4

under federal notice pleading; should the defendants have additional questions about the details of the plaintiff's claim, they can avail themselves of the discovery process.

The defendants additionally argue that the plaintiff's religious exercise claim should be dismissed based on the four factors set forth in *Turner*, 482 U.S. at 89-90: (1) whether there is a valid and rational connection between the regulation and a legitimate government interest behind the rule; (2) whether there are alternative means of exercising the right in question that remain available to the prisoner; (3) what impact any accommodation would have on the jail guards, other inmates, and allocation of prison resources; and (4) whether there is an absence of ready alternatives. But the defendants simply assert that "the *Turner* factors would . . . weigh strongly for the defendants" without discussing how each of the four criteria applies to the case at bar. The court can make no such finding on the basis of the undeveloped record.

Furthermore, the defendants' statement that other courts have upheld rules restricting inmates in maximum security from attending group services employs circular reasoning. The plaintiff maintains that he should not have been placed in maximum security in the first place. If the plaintiff was wrongfully placed in what amounted to disciplinary segregation, then the denial of all religious accommodations based solely on his maximum security status would violate his constitutional rights. Moreover, the case cited by the defendants, *Mawby v. Ambroyer*, 568 F. Sup. 245 (E.D. Mich. 1983)–besides being a pre-*Turner* decision from another circuit–actually denied a motion to dismiss a nearly identical claim. In ruling that the plaintiff had stated an actionable claim with respect to the denial of group religious services, the *Mawby* court noted, at p. 251,

> Defendant offers no specific justification for its policy except to claim that refusing to permit inmates in segregation to attend religious services is reasonable. The Sixth Circuit, however, requires that defendant "must do more than simply offer conclusory statements that a limitation on religious freedom is required for security, health or

5

safety in order to establish that its interests are of the 'highest order.' " *Weaver v. Jago*, 675 F.2d 116, 119 (6th Cir. 1982).

The defendants may be able to establish in a summary judgment motion that the circumstances surrounding the plaintiff's confinement at the Lake County Jail justified his non-participation in group religious services. However, the court cannot dismiss the plaintiff's claim on the basis of the pleadings. While *de minimis* burdens on the free exercise of religion are not of constitutional dimension, *Rapier*, 172 F.3d at 1006, n.4, a complete denial of religious opportunities may rise to the level of a First Amendment violation.

## Count 3: Denial of Medical Attention

The plaintiff alleges that on January 26, 2003, after he began coughing and vomiting, he requested medical attention. The plaintiff states that notwithstanding his pleas to the defendants Trush and Taxta that he was having an asthma attack and was experiencing difficulty breathing, they threatened to use mace on him if he continued to complain.

The Due Process Clause prohibits deliberate indifference to the serious medical needs of a pretrial detainee. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999); *Salazar v. City of Chicago*, 940 F.2d 233, 237-38 (7th Cir. 1991); *but see Brownell v. Figel*, 950 F.2d 1285, 1289-92 (7th Cir. 1991) (inattention only to serious injury or signs of serious injury amounts to a constitutional violation). The defendants characterize the lack of medical care as "*de minimis*," but at this stage of the proceedings, the court will consider the plaintiff's asthma attack to be a serious medical condition for purposes of constitutional analysis. Asthma, depending on its degree, may be a serious medical condition, *see Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001), and ignoring an actual asthma attack may well rise to the level of deliberate indifference. The motion to dismiss is consequently denied as to the plaintiff's medical claim.

### Claim 4: "Retaliation"

The plaintiff claims that the conditions described in preceding paragraphs were motivated by retaliatory animus against him. The plaintiff alleges that the defendants Machek, Taxta and DeFilippo specifically told him that he was being treated differently from other detainees because he was charged with murdering a fellow officer. Although the plaintiff's claim of "retaliation" is a misnomer (certainly, homicide is not a protected activity), the court will construe Count 4 as alleging an equal protection claim. The amended complaint does not make clear whether all maximum security inmates were treated the same, or whether the plaintiff was singled out for special restrictions due to the nature of his offense. If the defendants discriminated against the plaintiff by subjecting only him to the harsh and restrictive conditions he alleges, he may have an actionable equal protection claim against them.

Count Four additionally claims a denial of meaningful library services. The plaintiff alleges that he was required to remain in shackles and handcuffs during visits to the law library, that each trip to the library was limited to twenty or thirty minutes, and that he was unable to check out books.

The plaintiff has failed to articulate a cognizable First Amendment claim with respect to limitations on his access to the law library. With regard to criminal proceedings, an inmate's right of access to the courts is generally satisfied if he is represented by counsel. *See, e.g., Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir.), *cert. denied*, 488 U.S. 863 (1988). Because the plaintiff had a defense attorney capable of performing his or her own legal research, the plaintiff cannot claim that a denial of access to the courts affected his criminal trial.

Even assuming that the plaintiff had filed or was considering a separate civil action, he has shown no prejudice stemming from the approximately month-long denial of free use of a law library.

7

Inmates' right of meaningful access to the courts does not encompass an unfettered right of access to prison law libraries. *See, e.g., Smith v. Shawnee Library System*, 60 F.3d 317, 323 (7th Cir. 1995). The right is limited to access to a law library sufficient to enable a plaintiff to research the law to determine what facts are necessary to state a cause of action, to perform basic research, to formulate legal theories, and to get through initial stages of lawsuit. *Smith*, 60 F.3d at 322; *see also Brooks v. Buscher*, 62 F.3d 176 (7th Cir. 1995). Even "highly restrictive" procedures do not violate constitutional mandates if inmates still have meaningful access to the courts. *Hossman v. Spradlin*, 812 F.2d 1019, 1021 (7th Cir. 1987).

In this case, the plaintiff has made no allegation that limitations on his access to the law library prejudiced any pending or contemplated litigation. An inmate cannot establish actual injury simply by showing that the prison's law library is "sub-par in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Rather, the inmate must establish that the library's alleged shortcomings actually hindered his efforts to pursue a non-frivolous legal claim. *Id.* An allegation of denial of access to the courts must be more than merely conclusory; a complaint is inadequate if it "offers no specific facts to support these allegations--no court dates missed; no inability to make timely filings; no denial of legal assistance to which he was entitled; and no loss of a case which could have been won." *Id.* Here, the plaintiff has failed to meet that burden. Although the plaintiff may have a colorable equal protection claim if the defendants imposed heightened limitations on him alone, he has failed to articulate an independent claim under the First Amendment for denial of access to the courts.

The plaintiff likewise has no separate cause of action with respect to the denial of exercise privileges. The plaintiff alleges that he was confined to his cell twenty-three hours a day; he was not

8

allowed to go to the gym, or to participate in outdoor recreation, from January 3, 2003, to February 13, 2003.

The denial of exercise may rise to a constitutional violation in "extreme and prolonged situations where movement is denied to the point that the inmates' physical or psychological health is threatened." *Delaney v. DeTella*, 123 F. Supp.2d 429, 435 (N.D. Ill. 2000), *aff'd*, 256 F.3d 679 (7th Cir. 2001), *quoting Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). *See also French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) ("Where movement is denied and muscles allowed to atrophy, the health of the individual is threatened and the state's constitutional obligation is compromised.").

Short-term denials of exercise may be "inevitable" in the jail or prison context and are not so detrimental as to constitute a constitutional deprivation. *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001), *citing Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) (70-day denial permissible); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (28-day denial not a constitutional deprivation); *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1089 (7th Cir. 1986) (limited recreational activities sufficient, where average jail stay was 10 days or less); *Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir. 1986) (no deprivation where exercise was denied for 30 days, but then allowed one hour indoor exercise for next 6 months); *but see Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (viable constitutional claim where prisoner denied recreational opportunities for 7 weeks); *Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989) (reversing summary judgment for prison officials where segregated prisoner denied exercise for 101 days).

The forty-two day denial of formal exercise privileges, though of some concern to the court, did not rise to the level of a constitutional violation. There is a significant difference between a lack

of outdoor recreation and an inability to exercise. An inmate confined to the segregation unit retains the ability to improvise an exercise regimen in his cell or unit. The plaintiff also admittedly had at least one hour a day outside of his cell (although he does not describe how he was able to spend that hour). The plaintiff's claim regarding insufficient outdoor recreation is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### The Defendants' Personal Involvement

Contrary to the defendants' representations, the plaintiff has stated facts establishing the direct, personal involvement of the defendants DeFilippo, Machek, Taxta and Trush, as briefly summarized above. Nevertheless, the amended complaint fails to state a cause of action against the defendant Del Re. The plaintiff has not shown that the alleged violations of his constitutional rights occurred at Del Re's personal direction or with his knowledge and consent, as required by *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997) (citations omitted).

The mere fact that Del Re is the Sheriff of Lake County is insufficient to establish liability, as the doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. *Id.* Supervisors cannot be held liable for the errors of their subordinates. Although the defendant DeFilippo allegedly told the plaintiff that he and Del Re could "do whatever they want because it's their jail," that statement cannot fairly be attributed to Del Re, who was not present when DeFilippo made it. To be held liable under 42 U.S.C. § 1983,

10

a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye...." *Gentry*, 65 F.3d at 561 (citations omitted). Because the plaintiff has failed to show that Del Re was personally involved in the events underlying this lawsuit, he must be dismissed as a defendant.

## Official vs. Individual Capacity

Finally, the plaintiff may not sue the defendants in both their individual and official capacities. An action for damages against a county agent in his or her official capacity is, in essence, an action against the municipality. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978); *Luck v. Rovenstine*, 168 F.3d 323, 325 ( (7th Cir. 1999). A governmental entity is liable in an official-capacity suit under Section 1983 only when the entity is a "moving force behind the deprivation, thus requiring the entity's policy or custom to have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Ruffino v. Sheahan*, 218 F.3d 697, 700 (7th Cir. 2000) (a plaintiff seeking to pursue an official capacity claim "must be able to point to a theory that entitles [him] to sue the public agency"). In the case at bar, the plaintiff has failed to allege the existence of any custom or policy which permitted or required the actions of which he complains. The amended complaint is therefore dismissed insofar as the defendants are sued in their official capacities.

## CONCLUSION

For the reasons discussed in preceding paragraphs, the defendants' motion to dismiss (docket #19) is granted in part and denied in part. The plaintiff may proceed on his claims that the defendants placed him in punitive segregation without due process, interfered with his exercise of his religious beliefs, acted with deliberate indifference to his serious medical needs, and denied him

equal protection. However, Sheriff Del Re is dismissed as a defendant pursuant to Fed. R. Civ. P. 12(b)(6). The plaintiff's claims of denial of court access and lack of out-of-cell exercise are also dismissed. Furthermore, the amended complaint is dismissed to the extent that the defendants are sued in their official capacities. The plaintiff may proceed against the defendants DeFilippo, Machek, Taxta and Trush only in their individual capacities, and only on the above-enumerated claims.

The defendants are directed to answer the amended complaint or otherwise plead within twenty-one days of the date of this order.

ENTER: *Apr. 9 2003*

Joan B. Gottschall
United States District Judge